Approved: _____
MICHAEL C. McGINNIS
Assistant United States Attorney

Before: HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :    **SEALED COMPLAINT**

          - v. -                    :    Violation of
                                         18 U.S.C. §§ 1343 & 2
CYRIL D'SOUZA,                      :
                                         COUNTY OF OFFENSE:
          Defendant.                :    NEW YORK

- - - - - - - - - - - - - - - - - x

17 MAG 0299

SOUTHERN DISTRICT OF NEW YORK, ss.:

DOROTHY MANERA, being duly sworn, deposes and says that she is a Special Agent with the United States Fish and Wildlife Service ("USFWS") and charges as follows:

### COUNT ONE
### (Wire Fraud)

1. On or about June 6, 2014, in the Southern District of New York and elsewhere, CYRIL D'SOUZA, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, D'SOUZA received a wire transfer of $45,000 as a result of false and fraudulent representations regarding the authenticity of two black Rhinoceros Horns.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT TWO
(Wire Fraud)

2. On or about June 17, 2014, in the Southern District of New York and elsewhere, CYRIL D'SOUZA, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, D'SOUZA received a wire transfer of $45,000 as a result of false and fraudulent representations regarding the authenticity of two black Rhinoceros Horns.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Senior Special Agent for the USFWS, Division of Law Enforcement, which is part of the United States Department of Interior. I have served as a Special Agent with USFWS for the last 24 years. I have personally conducted or assisted in hundreds of investigations and prosecutions of criminal violations of the law, including the gathering of evidence to obtain a search or seizure warrant, and interviewing defendants, witnesses, and informants. I have also attended training pertaining to export violations, financial crimes, asset forfeiture and seizure. I am currently assigned to the Special Investigations Unit, which is responsible for investigating violations of the federal wildlife protection laws and related offenses. I have participated in investigations of such offenses, and have made and participated in arrests of individuals who have committed such offenses.

4. The information contained in this Complaint is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including, but not limited to: (a) business records and other documents, including bank records and records of electronic communications; (b) conversations with, and reports of interviews with, the defendant; (c) conversations with, and reports prepared by, other USFWS agents; and (d) physical evidence. Because this Complaint is being submitted for the limited purpose of establishing probable cause, it does not

2

include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of and conversations with others are reported herein, they are reported in substance and in part. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

## Background

5.  As discussed below, beginning in approximately March 2014, law enforcement officials in Canada and the United States opened an investigation into the illegal trafficking and smuggling of rhinoceros horns, elephant ivory, lion hides, and polar bear hides into numerous countries. Canadian officials informed USFWS that CYRIL D'SOUZA, the defendant, residing in Canada, was actively engaged in the illegal commercial trafficking of various wildlife items. In addition, USFWS learned that D'SOUZA was attempting to find an Asian dealer, in the New York City area, who was interested in purchasing polar bear hides. Acting undercover, I attempted to purchase two rhinoceros horns from D'SOUZA in the amount of $90,000 and have them shipped to me in the United States. Instead of selling genuine rhinoceros horns, D'SOUZA sold fake rhinoceros horns, yet kept possession of the $90,000.

## NEGOTIATING THE SALE OF BLACK RHINOCEROS HORNS

6.  On or about May 1, 2014, I, acting undercover, contacted CYRIL D'SOUZA, the defendant, via email to determine what, if any, wildlife items D'SOUZA was offering for sale. I contacted D'SOUZA purportedly on behalf of a client located in China who was interested in the purchase of black rhinoceros horns. Between approximately May 1, 2014 and approximately June 20, 2014, I exchanged phone calls, text messages, and e-mails with D'SOUZA regarding the sale and purchase of black rhinoceros horns.

7.  On or about June 2, 2014, I participated in a recorded telephone conversation with CYRIL D'SOUZA, the defendant, regarding the purchase of two black rhinoceros horns for $90,000. Based on my review of the recording of the telephone conversation, I have learned in part the following:

    a.  D'SOUZA stated that he could send two black rhinoceros horns directly to me in New York. D'SOUZA stated that the "tag" for the rhinoceros horn would be in the name of

one of his contacts.[1]

      b.    D'SOUZA explained in sum and substance that the tag would be in another individual's name because "[w]e are not supposed to sell [the rhinoceros] when we get the stuff. We can donate it or use it for display in museum. . . . We can just donate [the rhinoceros horns] to you. That's no problem. That's why it's good to have the money in cash or wire transfer the money to Hong Kong, so you can't tell. Cash is best."

      c.    D'SOUZA stated that the rhinoceros horns were "taken right off the animal," and described the horns as "fresh."

    8.    On or about June 2, 2014, CYRIL D'SOUZA, the defendant, sent me a text message providing banking information for the wire transfer of funds for the purchase of the two black rhinoceros horns. Based on my review of that text message, I know that the bank account provided by D'SOUZA was in the name of Mountain Tops International Inc. Ltd. and was located in Hong Kong ("Mountain Tops Hong Kong Account").

    9.    On or about June 4, 2014, I sent a text message to CYRIL D'SOUZA, the defendant. Based on a review of that text message, I know that the text message contained a picture of a wire transfer receipt for $45,000 from a bank account established by the USFWS for this operation ("Government Account") to the Mountain Tops Hong Kong Account (the "June 4 Wire Transfer").

    10.    On or about June 5, 2014, I participated in a recorded telephone conversation with CYRIL D'SOUZA, the defendant, regarding the June 4 Wire Transfer. Based in part on my review of the recording of the telephone conversation, I know in part the following:

      a.    D'SOUZA indicated that he had received the $45,000 wire transfer from the Government Account to the Mountain Tops Hong Kong Account

      b.    D'SOUZA requested that I name "Greg" as the recipient for future wires.

      c.    D'SOUZA promised to send me the black rhinoceros

---

[1] Based on my training and experience, I know that a "tag" refers to a permit for the possession of the wildlife item.

horns upon receipt of the remaining $45,000.

11. On or about June 6, 2014, I participated in a recorded telephone conversation with CYRIL D'SOUZA, the defendant, regarding the purchase of the two black rhinoceros horns. Based in part on my review of the recording of the telephone conversation, I know in part the following:

 a. I informed D'SOUZA that my purported client's agent would be travelling to New York City. D'SOUZA requested that the agent travel to Canada to examine the two black rhinoceros horns and that he would ship the horns once the agent confirmed their authenticity.

 b. I requested that D'SOUZA send the rhinoceros horns to me in New York prior to my sending the remaining $45,000 balance.

12. On or about June 8, 2014, I participated in a recorded telephone conversation with CYRIL D'SOUZA, the defendant, regarding the purchase of the black rhinoceros horns. Based in part on my review of the recording of the telephone conversation, I know in part the following:

 a. D'SOUZA explained that the two black rhinoceros horns were prepared for shipping, had been wrapped in shrink wrap, placed in a shipping box, and packed in liquid foam.

 b. D'SOUZA explained that the two black rhinoceros horns could not be identified by authorities when shipped in liquid foam.

 c. D'SOUZA stated that he would ship the two black rhinoceros horns once the remaining $45,000 was paid to the Mountain Tops Hong Kong Account.

13. On or about June 11, 2014, I participated in a recorded telephone conversation with CYRIL D'SOUZA, the defendant, regarding the purchase of the two black rhinoceros horns. Based in part on my review of the recording of the telephone conversation, I have learned in part the following:

 a. D'SOUZA indicated that he was at a camp in Timbavati, South Africa and that he had "got a beautiful rhino" that day.

 b. I informed D'SOUZA that I would wire the remaining $45,000 on Monday, June 16, 2014 into the Mountain

Tops Hong Kong Account. I stated that I would use the name "Greg" in the memo line for the wire transfer.

14. Based on a review of banking records, I know that on or about June 17, 2014, approximately $45,000 was transferred via wire from the Government Account to the Mountain Tops Hong Kong Account with the name "Greg" in the memo line.

### THE SHIPMENT OF FAKE RHINOCEROS HORNS

15. On or about June 17, 2014, I sent multiple text messages to CYRIL D'SOUZA, the defendant. Based on my review of those text messages, I have learned the following:

   a. I provided D'SOUZA with the shipping address for the rhinoceros horns. The address was located in the Southern District of New York (the "New York City Address").

   b. I informed D'SOUZA that no additional purchases would be made until the authenticity of the black rhinoceros horns was confirmed.

16. On or about June 19, 2014, I participated in a recorded telephone conversation with CYRIL D'SOUZA, the defendant, regarding the shipment of the black rhinoceros horns. Based in part on my review of the recording of the telephone conversation, I know in part the following:

   a. D'SOUZA stated that his "boys" had shipped the rhinoceros horns via overnight delivery. D'SOUZA stated that the shipping box contained a mannequin and a second box, which contained the foam-wrapped rhinoceros horns (the "Rhinoceros Horn Package"). D'SOUZA warned me not to use a saw when opening the shipment.

   b. D'SOUZA stated that he was in Africa.

### THE DISCOVERY OF FAKE RHINOCEROS HORNS

17. On or about June 20, 2014, I picked up the Rhinoceros Horn Package from the New York City Address and took the Rhinoceros Horn Package to a USFWS location in New Jersey. Once there, I opened the Rhinoceros Horn Package. Upon cutting away the plastic wrap surrounding the horn, I detected a strong odor resembling paint thinner. I also observed, what appeared to be, based on my training and experience, resin used to make taxidermy replica rhinoceros horns. Based on my training and

experience, I concluded that the black rhinoceros horns contained in the Rhinoceros Horn Package were not authentic black rhinoceros horns, but were instead fake rhinoceros horns (the "Fake Rhinoceros Horns").

18.  On or about June 20, 2014, I contacted CYRIL D'SOUZA, the defendant, by telephone and by text message. Based on a review of those conversations, I know the following:

  a.  D'SOUZA asked whether everything was okay with the shipment. I stated that D'SOUZA had sent fake rhinoceros horns. D'SOUZA stated that he could not hear me and the call was dropped.

  b.  D'SOUZA texted that he would call later but that he was in a bad area for satellite telephone reception.

19.  On or about June 24, 2014, CYRIL D'SOUZA, the defendant, contacted me by text message. Based on a review of that text message, I know that it read: "Had an accident mauled by a lion in hospitL [sic] cannot talk or leave sat phone on because if [sic] sensitive equipment around will be here for three weeks . . ."

20.  Based on conversations with Canadian law enforcement officials, and reports documenting those conversations, I have learned the following:

  a.  On or about June 18, 2014, an individual mailed a package (the "Package") from a UPS store (the "UPS Store") in Ontario, Canada to the New York City Address.

  b.  The Manager of the UPS Store identified a picture of CYRIL D'SOUZA, the defendant, as the individual who shipped the Package. Based on this statement and identification, I believe that D'SOUZA was not in Africa but was instead in Canada and was the individual who mailed the Rhinoceros Horns Package.

  c.  On or about June 19, 2014, a man called the UPS Store and inquired whether the package cleared customs in the United States.

### MONEY TRANSFERS TO CYRIL D'SOUZA AND KNOWN ASSOCIATES

21.  Based on a review of financial records, I have learned the following:

  a.  On or about June 4, 2014, approximately $45,000

7

was transferred from the Government Account to the Mountain Tops China Account.

        b.    On or about June 6, 2014, approximately $34,975 was transferred from the Mountain Tops China Account to an account maintained by Mountain Tops International in Canada ("Mountain Tops Canada Account").

        c.    On or about June 10, 2014, approximately $7,475 was transferred from the Mountain Tops China Account to the Mountain Tops Canada Account.

        d.    On or about June 17, 2014, $45,000 was transferred from the Government Account to the Mountain Tops China Account.

        e.    On or about June 19, 2014, $44,975 was transferred from the Mountain Tops China Account to the Mountain Tops Canada Account

22. Based on a review of financial records, I have learned the following:

        a.    Between June 18, 2014 and June 20, 2014, the Mountain Tops Canada Account transferred approximately $20,000 to financial accounts in the name "Cyril D'Souza."

        b.    Between June 16, 2014 and June 19, 2014, the Mountain Tops Canada Account purchased approximately $3,000 in traveler's checks issued in the name of "Cyril D'Souza."

c.  Between June 10, 2014 and June 24, 2014, approximately $40,000 was withdrawn from the Mountain Tops Canada Account by an individual with the initials "GB."

WHEREFORE, I respectfully request that an arrest warrant be issued for CYRIL D'SOUZA, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
DOROTHY MANERA
Special Agent
U.S. Fish & Wildlife Service

Sworn to before me this
12th day of January 2017

_____
HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9